UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| BILL D. ALCIUS, an individual; | ) | |
| RICARDO FLORESTAL, an individual. | ) | CASE NO. 0:22-CV-60386 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA GROTENHUIS, individually; | ) | |
| RYAN RILLO, individually; | ) | |
| BRYAN KALISH, individually; | ) | |
| DANIEL MCEVOY, individually; | ) | |
| THOMAS MCGUIRE, individually; | ) | |
| PAUL SCHEEL, individually; | ) | |
| RAUL TOLEDO, individually; | ) | |
| Defendants. | ) | |
| ——————————————————— | ) | |

## COMPLAINT

COMES NOW, Plaintiffs, BILL D. ALCIUS and RICARDO FLORESTAL, by and through undersigned counsel, and hereby files this Complaint against Defendants for damages. In support thereof, Plaintiff alleges, and states as follows:

## INTRODUCTION

1. This is an action for money damages brought by Plaintiffs.

2. This action is brought to vindicate deprivations of their constitutional rights caused by police officers conspiring to unlawfully arrest the Plaintiffs, in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendment.

## JURISDICTION and VENUE

3. This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. §1983 and 42 U.S.C. § 1988. The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331,1343.

1

4.  This case is instituted in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §1391 as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

## PARTIES

5.  At all times relevant hereto, Plaintiff Bill Alcius was a resident of the State of Florida and a citizen of the United States of America.

6.  At all times relevant hereto, Plaintiff Ricardo Florestal was a resident of the State of Florida and the United States of America.

7.  At all times relevant hereto, Defendant Joshua Grotenhuis was a resident of the State of Florida and was acting under color of state law in his capacity as a law enforcement officer employed by the City of Hollywood (the "City").

8.  At all times relevant hereto, Defendant Joshua Grotenhuis was a resident of the State of Florida and was acting under color of state law in his capacity as a law enforcement officer employed by the City of Hollywood (the "City").

9.  At all times relevant hereto, Defendant Ryan Rillo was a resident of the State of Florida and was acting under color of state law in his capacity as a law enforcement officer employed by the City.

10. At all times relevant hereto, Defendant Bryan Kalish was a resident of the State of Florida and was acting under color of state law in his capacity as a law enforcement officer employed by the City.

11. At all times relevant hereto, Defendant Daniel McEvoy was a resident of the State of Florida and was acting under color of state law in his capacity as a law enforcement officer employed by the City.

12. At all times relevant hereto, Defendant Thomas McGuire was a resident of the State of Florida and was acting under color of state law in his capacity as a law enforcement officer employed by the City.

13. At all times relevant hereto, Defendant Paul Scheel was a resident of the State of Florida and was acting under color of state law in his capacity as a law enforcement officer employed by the City.

14. At all times relevant hereto, Defendant Raul Toledo was a resident of the State of Florida and was acting under color of state law in his capacity as a law enforcement officer employed by the City.

## GENENERAL ALLEGATIONS

15. On February 13, 2019, the Plaintiffs visited the Party City store located in the City of Hollywood, Florida, on Oakwood Boulevard.

16. They arrived at the store as the store was preparing to close.

17. The store doors were closed as they arrived, and they were waiting outside with a white male who was there to pick up balloons for delivery.

18. The balloon delivery man was allowed inside to pick up the balloons, while the Plaintiffs begged the team leader, Vanessa Clairizier, to be allowed inside to make a quick purchase.

19. Ms. Clairizier eventually let the Plaintiffs inside the store, and they rushed in the store to get their desired items quickly before the store closed.

20. The balloon delivery man called the Police, assuming that the Plaintiffs came to the store to commit theft.

21. Ms. Clairizier overheard the balloon delivery man call the police and advised him that there was no need to call.

22. Once the balloon delivery man left, Ms. Clairizier called dispatch to advise to cancel the call for service.

23. After Ms. Clairizier called dispatch to cancel the call for service, Charles Ferguron, and employee of Party City, helped the Plaintiffs quickly locate and select the items they came to the store to get.

24. After selecting their items, the Plaintiffs proceeded to the front to pay for their items with cashier Vanessa Montes, as several Hollywood Police Department officers arrived, including some of the Defendants.

25. The officers, to include some of the Defendants, immediately went and detained the Plaintiffs and attempted to pat them down.

26. The officers who arrived inside the store knew that the call for service had been canceled by Ms. Clairizier, yet still attempted to detain the Plaintiffs and attempt to pat them down.

27. Before the officers arrived in the store, the Plaintiffs had already paid for their items.

28. As the officers illegally seized the Plaintiffs, the Plaintiffs became irritated by the harassment.

29. The officers then forcefully placed Plaintiff Florestal into custody, using excessive force, and without probable cause to place Mr. Florestal under arrest.

30. Plaintiff Alcius was still at the register when Plaintiff Florestal was taken into custody.

31. The officers then allowed Plaintiff Alcius to leave the store, and as he was leaving Defendant Toledo forcefully struck the Plaintiff in the head while other officers, to

4

include some of the Defendants, began to attack Plaintiff Alcius while he was on the ground.

32. Plaintiff Alcius was taken into custody with no probable cause to do so.

## The Conspiracy

33. After the Plaintiffs were taken into custody, the Defendants began to discuss the crimes to charge the Plaintiffs with, to support taken them into custody.

34. Thereafter the Defendants made Vanesssa Clairizier, Charles Ferguron, and Vanessa Montes, all separate.

35. The Defendants reviewed video with Vanessa Clairizier, made her only retrieve video footage showing the police interaction, and specifically excluded the time that the Plaintiffs went into the store.

36. Not seeing any criminal activity on the surveillance footage, the Defendants decided for Vanessa Clairizier, Charles Ferguron, and Vanessa Montes to write sworn affidavits.

37. As Vanessa Clairizier, Charles Ferguron, and Vanessa Montes were all separated, the Defendants made each of them write false sworn statements in the form of an affidavit, mentioning that the Plaintiffs forced their way inside after the store closed and frightened them to the point that the police were called.

38. The Defendants specifically came up with words for Vanessa Clairizier, Charles Ferguron, and Vanessa Montes to write, and had them write down word for word, an affidavit that contained false statements, knowing that the statements that they were writing were false.

39. The Defendants then agreed to charge Plaintiff Alcius with Trespassing and Battery on a Law Enforcement Officer without having probable cause to do so, and

thereafter the State of Florida filed the same charges that the Defendant was arrested for.

40. The Defendants then agreed to charge Plaintiff Florestal with Trespassing and Resisting an Officer Without Violence without having probable cause to do so, and thereafter the State of Florida filed the same charges that the Defendant was arrested for.

41. Plaintiff Alcius eventually plead no contest to Trespassing, after facing difficulties proving that the affidavits were false.

42. Plaintiff Florestal continued to fight against the charges, and eventually in a deposition of Vanessa Montes, she admitted that the affidavit was false and that she was told what to write on the affidavit, word for word.

43. The Defendants conspired and agreed to write false police reports which were used to prosecute the Defendants.

44. Upon information and belief, Defendant Raul Toledo admitted to someone that the Defendants made up the whole story regarding what they reported for the arrest of the Plaintiffs on February 13, 2019.

45. Upon information and belief, the Defendants agreed and conspired to change other documents related to this incident, including drafting a false response to resisting investigation report.

46. The Plaintiffs endured the emotional stress and mental anguish of potentially facing incarceration for crimes that they did not commit.

47. The Plaintiffs incurred the cost of legal fees for hiring Defense Counsel.

48. Plaintiff Alcius was left with no decision but to plead no contest and did a year of probation for a crime he did not commit.

49. The Plaintiffs were mentally scarred and lost all trust in law enforcement due to their interaction with the Defendants on February 3, 2019.

### COUNT I. 42 U.S.C. § 1983 – Conspiracy to violate the Plaintiffs Fourth, Fifth, Eighth, and Fourteenth Amendment Rights
### (*All Plaintiffs v. All Defendants*)

50. Plaintiff hereby incorporates paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51. This count arises purely out of 42 U.S.C. § 1983 and the Fourth, Fifth, Eighth, and Fourteenth Amendment of the United States Constitution. State law claims of limitations and defenses under state law are not applicable to this count.

52.  42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

53. Plaintiffs are a citizen and/or resident of the United States and the Defendants are a person for purposes of 42 U.S.C. § 1983.

54. The Defendants at all times relevant hereto, were acting under the color of state law in their capacity as law enforcement officers for the City and their acts and/or omissions were conducted within the scope of their official duties or employment.

55. At the time of the complained of events, Plaintiffs had a clearly established constitutional right under the Fourth, Fifth, Eighth, and Fourteenth Amendment to include but not limited to:

(a) The right not to be deprived of life, liberty or property without due process of law under the Fourteenth Amendment;

(b) The right not to be subjected to punishment without due process of law under the Fifth Amendment;

(c) The right to be free from cruel and unusual punishment under the Eighth Amendment; and

(d) The right to be free from excessive police force and to be free from unreasonable seizures under the Fourth Amendment.

56. Plaintiffs also had the clearly established Constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by law enforcement.

57. Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

58. The Defendants reached an understanding or agreement that they would deny the Plaintiffs their Fourth, Fifth, Eighth, and/or Fourteenth Amendment constitutional rights.

59. The conspiracy by the Defendants resulted in an actual denial of the Plaintiffs Fourth, Fifth, Eighth, and/or Fourteenth Amendment constitutional rights.

60. As a proximate result of the Defendants' unlawful conduct, the Plaintiffs have suffered actual physical injuries, pain and suffering, mental anguish, and other damages and losses as described herein entitling them to compensatory and special damages, in amounts to be determined at trial. As a further result of Defendants

unlawful conduct, the Plaintiffs have suffered special damages, in amounts to be established at trial.

61. Plaintiffs are further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

62. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against Defendant Jehud Presume under 42 U.S.C. § 1983, in that the actions of Defendant Jehud Presume have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of the Plaintiffs.

## PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment for the Plaintiffs and against each of the Defendants and grant:

A. compensatory and consequential damages, including damages, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

B. economic losses on all claims allowed by law;

C. special damages in an amount to be determined at trial;

D. punitive damages on all claims allowed by law against all Defendants and in an amount to be determined at trial;

E. attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

F. pre- and post-judgment interest at the lawful rate; and,

G. any further relief that this court deems just and proper, and any other

appropriate relief at law and equity.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues triable by jury.

Respectfully Submitted,

NWAHIRI LAW, PLLC

s/ TOBECHUKU TONY NWAHIRI

_____

TOBECHUKU TONY NWAHIRI
Florida Bar No. 112107
Attorney for the Plaintiff
Tobe@NwahiriLaw.com
13499 Biscayne Boulevard, Suite 107, Miami, FL 33181
P: 305-345-4117 F: 305-503-4614